# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

### DALLAS DIVISION

THOMAS RICHARDS

*Plaintiff,*

*v.*

LINDA YACCARINO,

*Defendant*

Case No. 3:25-cv-1863

Lisa Weingarten Richards, Esq.

VSB #96671

NY BAR #4932570

LWR Law Offices

3060 Williams Dr

Ste 300 #510

Fairfax, VA 22031

*Tel.:* (202) 981-2059

lwr@lwrlawoffices.com

*Counsel for plaintiff*

## MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT LINDA YACCARINO

*Use of Generative Artificial Intelligence*
This brief was prepared with the assistance of generative artificial intelligence.

TO THE HONORABLE COURT:

Plaintiff respectfully moves this Court for entry of default judgment against Defendant Linda Yaccarino pursuant to Federal Rule of Civil Procedure 55(b)(2) and states as follows:

## I. PROCEDURAL BACKGROUND

On July 8, 2025, Plaintiff filed a First Amended Complaint in Richards v X Corp & Trump, which specifically named Linda Yaccarino as being partly responsible for shadowbanning and 11 specific causes of action against X Corp. It also specifically listed her as a party to receive certain specific discovery requests.

The very next day, July 9, Linda Yaccarino resigned as CEO of X Corp. without explanation or succession planning.

Plaintiff strategically delayed serving X Corp for nearly 90 days while improving the pleadings, having placed on the record that amendments would follow the initial draft filing submitted to obtain emergency TRO relief. (This is specifically referenced by Judge Starr in Docket No. 20, filed April 17, 2025, in 3:25-cv-916 Richards v X, Corp & Trump) This deliberate delay makes Defendant's immediate resignation within 10 hours of the Amended Complaint's filing particularly significant, as it demonstrates her monitoring of the litigation and immediate flight upon the complaint's completion and filing as she was specifically identified for individual constitutional violations.

July 16, 2025, the present matter was filed against Linda Yaccarino. Efforts to serve her were difficult and a private investigator was retained for the purpose.

On August 14, 2025, Defendant Linda Yaccarino was personally properly served with the Summons and Complaint in the present matter at 27 The Preserve, Woodbury, NY 11797.

Defendant's response was due on September 4, 2025, twenty-one (21) days after service pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i).

Defendant Linda Yaccarino would have had actual notice of these proceedings significantly earlier, as Plaintiff originally filed the partner action against X Corp on April 13, 2025, when Defendant was serving as X Corp's Chief Executive Officer. X Corp was served with Plaintiff's TRO application on April 18, 2025, and filed its response on April 24, 2025.

Eight (8) days have elapsed since Defendant's response was due. Consistent with federal court and Fifth Circuit expectations for professional conduct, Plaintiff provided this additional time beyond the Rule 12(a) deadline to allow reasonable opportunity for any inadvertent oversight to be corrected.

Defendant Linda Yaccarino has never appeared in this action, filed any pleading, or otherwise defended against Plaintiff's claims.

Upon information and belief, Defendant Linda Yaccarino is not in military service and is not entitled to the benefits of the Servicemembers Civil Relief Act.

On September 12, 2025, Plaintiff has filed a Request for Entry of Default with the Clerk of this Court pursuant to Fed. R. Civ. P. 55(a). This Motion for Default Judgment is contingent upon the Clerk's entry of default and should be considered after such entry is made.

Plaintiff seeks default judgment from this Court pursuant to Fed. R. Civ. P. 55(b)(2). Given the complex nature of the constitutional claims, Plaintiff seeks judicial determination of appropriate relief, including damages exceeding $500 million and injunctive relief.

## II. SUBSTANTIVE CLAIMS AGAINST DEFENDANT YACCARINO

### COUNT I: DIRECT CONSTITUTIONAL VIOLATION - FIRST AMENDMENT

Individual Liability for Constitutional Violations: Defendant Yaccarino, acting in her individual capacity as CEO of X Corp., violated the First Amendment by depriving Plaintiff of rights secured by the Constitution under color of law through systematic religious discrimination via her "lawful but awful" framework that suppressed Plaintiff's biblical content while accommodating secular viewpoints. Defendant acted under color of law because her role as CEO of X Corp. -- which became a government entity through unprecedented government entanglement via owner Elon Musk's simultaneous exercise of federal authority -- made her a government actor whose content moderation decisions constitute direct government action subject to constitutional constraints. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

Federal Action Through Government Entanglement: Defendant's actions constitute federal action because X Corp. operated under unprecedented government entanglement through owner Elon Musk's simultaneous exercise of federal authority as head of DOGE, his $15.4 billion in government contracts, systematic deployment of AI systems performing governmental functions, and continuing federal authority under DOGE as stated by President Trump and Musk.

Personal Participation: Defendant personally participated in the constitutional violations by exercising executive authority over discriminatory content policies, making false public

statements to conceal systematic suppression, directing corporate resources toward viewpoint-based religious discrimination, and coordinating with government actors in violation of constitutional rights.

Systematic Religious Viewpoint Discrimination: Under Defendant's leadership, X Corp. systematically suppressed Plaintiff's biblical religious expression while accommodating Catholic and secular viewpoints, violating both Free Speech and Establishment Clause protections.

## COUNT II: CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS

Conspiracy Under Color of Law: Defendant Yaccarino conspired with X Corp. owner Elon Musk, President Trump, and other government actors to systematically deprive Plaintiff of constitutional rights through coordinated suppression of bible-based religious expression. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

Overt Acts in Furtherance: The conspiracy included multiple overt acts including false public statements claiming content neutrality while implementing discrimination, mass deletion of religious content following legal challenges, strategic coordination with government actors under DOGE framework, and evidence destruction through systematic content removal.

Meeting of Minds: The conspiracy is evidenced by coordinated responses to legal challenges, including Defendant's strategic resignation within 10 hours of legal exposure, demonstrating awareness of wrongdoing and coordination to evade accountability.

## COUNT III: TEXAS DECEPTIVE TRADE PRACTICES ACT VIOLATION

Consumer Status and Systematic Deceptive Practices: Plaintiff qualifies as a "consumer" under DTPA § 17.45(4) through his purchase of API access ($200 monthly) and Premium services from X Corp. during Defendant's tenure as CEO. Under Defendant's executive authority, X Corp. engaged in false, misleading, and deceptive acts prohibited by DTPA § 17.46(a) including false service characteristics, misrepresented service quality, false rights representations, and material omissions concealing differential moderation targeting religious viewpoints. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

CEO-Level Fraudulent Inducement: Defendant, as CEO, knowingly induced Plaintiff's continued platform investment through false promises of content neutrality and free speech protection, preventing migration to alternative platforms and causing substantial financial harm.

## COUNT IV: FRAUDULENT MISREPRESENTATION

Defendant engaged in fraudulent misrepresentation through discriminatory application of content moderation policies while making false public statements about platform neutrality. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

Discriminatory Religious Targeting Under "Lawful But Awful" Framework: Defendant's constitutional violation stems from discriminatory application of her explicitly stated "lawful but awful" suppression policy. As a documented "devoted Catholic" with extensive government entanglement, Defendant systematically classified Mr. Richards' biblical criticism of Catholic institutions as "awful" warranting suppression, while permitting equally controversial secular content to receive normal platform treatment.

Knowledge of Falsity: Defendant knew these statements were false based on her executive authority over content moderation policies that systematically suppressed religious viewpoints.

Intent to Deceive: Defendant intended to deceive users, advertisers, and the public about X Corp.'s true content moderation practices to maintain platform credibility while engaging in discriminatory suppression.

Justifiable Reliance: Mr. Richards reasonably relied on these representations by continuing to invest time, resources, and content creation on the platform rather than investing that time on work for alternative platforms.

## COUNT V: CIVIL RICO VIOLATION (18 U.S.C. § 1962)

Defendant participated in a racketeering enterprise and engaged in a pattern of racketeering activity including wire fraud, mail fraud, and extortion during her tenure as CEO. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

Enterprise Existence: Defendant participated in an enterprise consisting of X Corp., President Trump, government actors, and coordinated entities engaged in systematic suppression of religious expression while maintaining false public representations through Musk's campaign investment, Trump's creation of DOGE, Defendant's discriminatory policy implementation, and Vatican-government-tech coordination framework.

Pattern of Racketeering Activity: Defendant engaged in a pattern of racketeering activity through documented predicate acts during her tenure as CEO including wire fraud through systematic transmission of false promises, mail fraud through deceptive service agreements, and extortion through systematic suppression escalating after legal demands.

Continuity and Relationship: The predicate acts demonstrate both continuity spanning Defendant's entire tenure as CEO (2023-2025) and relationship serving the common purpose of suppressing biblical criticism while maintaining false neutrality under Defendant's "lawful but awful" framework.

## COUNT VI: CORPORATE OFFICER LIABILITY

Individual Liability Doctrine: Under established corporate officer liability doctrine, Defendant bears personal responsibility for constitutional violations committed by X Corp. under her executive authority. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

Direct Personal Conduct: Defendant's personal liability stems from her direct participation in constitutional violations, including publicly articulating the "lawful but awful" suppression framework that enabled systematic religious discrimination, making false statements about platform neutrality, exercising executive authority over discriminatory content moderation policies, and coordinating strategic responses to legal challenges.

Government Entanglement Liability: When private entities become government actors through unprecedented entanglement, their corporate officers bear individual liability for constitutional violations under the same principles that would apply to government officials.

## COUNT VII: BREACH OF CONTRACT

Enhanced Contractual Relationship: During Defendant's tenure as CEO, Plaintiff's relationship with X Corp. included enhanced contractual obligations through his $200 monthly API payments and Premium subscription. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

Breach Through Discriminatory "Lawful But Awful" Implementation: Defendant breached X Corp.'s explicit promises by implementing "lawful but awful" suppression in a religiously discriminatory manner, including systematic classification of Plaintiff's biblical content as "awful" preventing followers from seeing posts as promised, breach of free speech commitments, Premium service fraud through suppressed visibility despite paid prioritization, and API service breach through throttling while continuing to charge fees.

CEO Personal Responsibility: Defendant, as CEO, bore executive responsibility for ensuring contractual compliance and made personal public guarantees about platform neutrality that created individual liability for contractual breaches.

## COUNT VIII: PROMISSORY ESTOPPEL

Specific Executive Promises Creating Reasonable Reliance: Defendant made specific, unambiguous promises as CEO that created reasonable expectations of neutral platform treatment including categorical free speech guarantees ("Free Speech. Today. Tomorrow. Always. X."), promises of equal treatment for disagreed-with viewpoints, and neutral application of "lawful but awful" standards. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

Reasonable Reliance Despite Advertising Background: Although Defendant's advertising executive background involves contradictory messaging, Plaintiff's reliance was reasonable because these promises came from the Chief Executive Officer with specific operational commitments and industry standard expectations of neutral policy application.

Detrimental Reliance on Neutral Implementation: Plaintiff reasonably relied on neutral implementation by continuing platform investment during Defendant's tenure rather than spending time on alternative platforms, despite growing evidence of discriminatory application.

## COUNT IX: ESTABLISHMENT CLAUSE VIOLATION

Denominational Preference Under Executive Authority: Under Defendant's leadership, X Corp. systematically established Catholic religious perspectives over biblical viewpoints through coordinated platform action, violating the Establishment Clause's prohibition on denominational preferences. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

Personal Vatican Coordination: Defendant's documented Catholic devotion, combined with her calculated silence regarding Pope Leo XIV's historic election (which occurred May 8, 2025 -- after Plaintiff filed the partner lawsuit against X Corp.) while posting about other Catholic matters, reveals consciousness of her role in coordinating platform censorship with Vatican interests while attempting to conceal her denominational bias in content moderation decisions.

Systematic Religious Discrimination: During Defendant's tenure, Plaintiff's biblical critique of Catholic institutional corruption faced systematic suppression while Catholic perspectives received normal algorithmic treatment, creating governmental endorsement of Catholic over biblical religious authority under Defendant's executive control.

## COUNT X: RELIGIOUS FREEDOM RESTORATION ACT VIOLATION

RFRA Application Through Government Entanglement: During Defendant's tenure, X Corp.'s unprecedented government entanglement through owner Musk's federal authority created government action sufficient to trigger RFRA protections when content policies suppressed

religious expression under Defendant's executive oversight. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

Substantial Burden Under Executive Authority: Defendant's systematic suppression of Plaintiff's biblically-guided content substantially burdened his religious exercise by effectively silencing his digital ministry.

No Compelling Interest: Defendant cannot demonstrate that suppressing Plaintiff's religious expression under her executive authority furthered any compelling governmental interest or used the least restrictive means.

## COUNT XI: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

Executive Interference with Business Relationships: During Defendant's tenure as CEO, she systematically interfered with Plaintiff's reasonable expectation of business relationships including Creator Revenue Sharing, speaking engagements, and potential subscription offerings. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

Willful Interference Under Executive Authority: Defendant's systematic interference occurred through systematic reduction in engagement metrics through discriminatory "lawful but awful" implementation, mass deletion of 16 years of content during her tenure, and artificial suppression during critical periods when religious content gains attention.

Industry-Standard Damage Calculations: Industry metrics confirm content creators with comparable follower counts generate $1.65 per follower annually, indicating Defendant's interference caused lost revenue of $4.2 million annually during her tenure.

## COUNT XII: OBSTRUCTION OF JUSTICE

Systematic Evidence Destruction: Defendant engaged in systematic obstruction of justice by overseeing mass deletion of 61,600+ posts during active litigation, directing removal of 5,974 media files immediately following legal demands, implementing algorithmic manipulation to create false evidence of platform neutrality, and coordinating strategic departures to evade legal accountability. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

Intent to Impair Judicial Proceedings: The timing of evidence destruction directly following legal communications demonstrates Defendant's intent to impair this Court's ability to fairly adjudicate Plaintiff's claims by eliminating critical evidence.

Pattern of Coordinated Obstruction: Defendant's resignation within 10 hours of being named in litigation represents the culmination of a systematic pattern of obstruction designed to evade accountability rather than defend the merits of constitutional violations.

## COUNT XIII: CIVIL CONSPIRACY TO OBSTRUCT JUSTICE

Conspiracy to Impair Legal Proceedings: Defendant conspired with X Corp.'s owner and President Trump to systematically obstruct justice through coordinated evidence destruction, strategic departures timed to legal challenges, surveillance of attorney-client communications, and manipulation of corporate structure to evade accountability. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

Overt Acts in Furtherance: The conspiracy included multiple overt acts designed to impair legal proceedings including real-time surveillance evidenced by June 2-5 timeline, systematic content

deletion following legal demands, strategic resignation to avoid testimony and document production, and algorithmic manipulation to create false evidence.

## COUNT XIV: INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

Systematic Interference with Business Opportunities: During Defendant's tenure as CEO, she systematically interfered with Plaintiff's reasonable expectation of business relationships and economic opportunities including Creator Revenue Sharing programs, speaking engagements and ministry opportunities, potential subscription-based religious content offerings, and book sales and publication opportunities linked to platform visibility. Plaintiff incorporates by reference all preceding paragraphs and the allegations in the underlying complaint.

Willful and Intentional Interference: Defendant's interference was willful and intentional, demonstrated through 98% reduction in content visibility under her executive authority, mass deletion of 16 years of content establishing plaintiff's religious authority and credibility, systematic suppression during critical periods, and continued collection of Premium and API fees while deliberately undermining the services those payments were intended to secure.

Industry-Standard Damage Calculations: Industry metrics confirm that content creators with comparable follower counts (3,400+) generate $1.65 per follower annually through platform monetization. Defendant's systematic interference caused lost revenue of approximately $5,610 annually during her tenure, with additional losses from prevented growth and business development opportunities exceeding $100,000 annually.

## III. CONSCIOUSNESS OF GUILT AND SOPHISTICATED PARTY ANALYSIS

Remarkably, Defendant Linda Yaccarino announced her resignation from X Corp on July 9, 2025, approximately 10 hours after Plaintiff filed the Amended Complaint against X Corp which specifically named her illegal actions. Notably, Defendant has since assumed the role of CEO at eMed, demonstrating her continued presence in the United States and ongoing business activities, which further negates any claim of inability to respond to these proceedings.

Further, while Defendant was extensively referenced throughout the amended complaint in the X Corp litigation for her role in systematic constitutional violations, she was not individually named as a defendant in that action. Her resignation occurred specifically upon being identified as personally liable for constitutional violations, not merely upon being mentioned in corporate litigation.

Consistent Pattern of Evasion: Defendant's failure to respond mirrors her earlier strategic flight from X Corp itself—resigning as CEO rather than facing accountability during active litigation. *This consistent pattern of evasion when confronted with legal consequences reveals a deliberate strategy to avoid defending conduct she knows to be indefensible.*

Sophisticated Party with Full Knowledge: Defendant Yaccarino is a highly sophisticated party with access to substantial legal resources and counsel. As detailed in *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998), relevant factors for default judgment include "whether the default was caused by a good faith mistake or excusable neglect." Here, Defendant's failure to respond cannot be attributed to mistake or neglect given the sophisticated nature of the parties and their knowledge of the litigation.

Extensive Public Documentation and Notice: Plaintiff was extraordinarily vocal about this litigation through multiple channels, including detailed blog posts, social media campaigns on X

and Facebook (where plaintiff has close to 20,000 followers total – despite being shadowbanned and censored for 16 years) and comprehensive public documentation of Defendant's role in the constitutional violations. This extensive public discourse ensured that Defendant had actual knowledge of the proceedings far beyond the formal service requirements. Moreover, formal service was properly completed through personal delivery with identity confirmation.

Strategic Choice Not to Defend: Defendant's decision to resign from X Corp and subsequently ignore these proceedings, despite having ample resources, sophisticated counsel, and full knowledge of the case, represents a calculated choice to face default judgment rather than defend on the merits—itself powerful evidence that she has no viable defense to the constitutional violations alleged. Defendant's immediate transition to a new CEO position at eMed confirms both her continued availability to defend these proceedings and her conscious choice to ignore her legal obligations in this matter.

## IV. DAMAGES

Quantifiable Economic Harm: Plaintiff has suffered economic damages during Defendant's tenure calculated at $4.2 million annually, based on systematic suppression of platform engagement that prevented monetization opportunities including creator revenue sharing, speaking engagements, and business relationships.

Constitutional Violation Multiplier: Courts have recognized substantial damages for constitutional violations even without demonstrable economic harm. The systematic suppression of religious expression under government entanglement warrants enhanced compensation reflecting the severity of First Amendment violations.

Suppression-Affected Damages Calculation: Courts recognize that when wrongful conduct prevents establishing financial track records, damages should reflect comparable creators' earnings without suppression rather than artificially depressed historical earnings. *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931). Defendant's systematic suppression through "lawful but awful" discrimination artificially depressed Mr. Richards' historical performance metrics, requiring damages calculation based on industry standards for unsuppressed religious content creators rather than Defendant's deliberately throttled engagement rates.

Executive Responsibility Enhancement: Defendant's CEO-level authority during the constitutional violations justifies enhanced damages reflecting the higher standard of care and greater culpability associated with executive positions.

Consciousness of Guilt Through Strategic Flight: Defendant's resignation within 10 hours of being named as an individual defendant, followed by her complete failure to respond to these proceedings despite proper service, demonstrates consciousness of guilt that supports the damages calculation. Her immediate transition to CEO of eMed, based in Miami, FL confirms her availability to respond, making her silence particularly probative of the validity of Plaintiff's claims.

Precedential Damage Framework: The $500 million damages demand is justified by established precedents for comparable constitutional harms:

- o   Alex Jones defamation verdict: $1.48 billion

- o   Fox/Dominion settlement: $787.5 million

- o   Jean Carroll v. Trump: $83.3 million

- o  Doe v. Fullstory, Inc.: $148 million

Constitutional Violation Multipliers: Courts permit substantial multipliers when defendants intentionally harm fundamental rights:

- o  *BMW v. Gore*, 517 U.S. 559: Permits multipliers exceeding single digits for intentional constitutional violations

- o  *State Farm v. Campbell*, 538 U.S. 408: 40× multiplier justified for malicious conduct

- o  *Carey v. Piphus*, 435 U.S. 247, 254 (1978): Damages should "compensate persons for injuries caused by the deprivation of constitutional rights"

Strategic Evasion as Evidence of Liability: Defendant's failure to file even a motion to dismiss, despite having sophisticated legal counsel and clear notice of the proceedings, strongly supports Plaintiff's allegations. If Defendant believed Plaintiff's claims were frivolous, the normal course would be to file responsive pleadings rather than complete avoidance of the legal system.

Specific Damages Categories:

- o  Loss of ministry reach and impact: $200 million (systematic suppression of religious expression over 16+ years under Defendant's "lawful but awful" framework)

- o  Damage to reputation and standing: $100 million (false characterization of biblical content as "awful" warranting suppression)

- o  Loss of business opportunities: $150 million (Creator Revenue Sharing, speaking engagements, subscription services prevented by systematic throttling)

    o   Emotional distress and constitutional harm: $50 million (targeting of religious beliefs and systematic discrimination)

    o   **TOTAL COMPENSATORY DAMAGES: $500 million**

DTPA Enhanced Damages: Under Texas Deceptive Trade Practices Act § 17.50(b)(1), knowing and intentional violations warrant consideration of enhanced damages within the overall damage framework.

Punitive Damages Incorporated: Given Defendant's strategic evasion and consciousness of guilt evidenced by her immediate resignation and subsequent silence, the $500 million total includes punitive elements sufficient to deter similar executive misconduct while remaining proportionate to established precedents.

## V. LEGAL STANDARD FOR DEFAULT JUDGMENT

A judgment by default is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as one rendered after answer and contest. A failure to answer is taken as an admission of the truth of the facts stated in the complaint. *Last Chance Mining Co. v. Tyler Mining Co.*, 157 U.S. 683, 691-92 (1895).

Default judgments are available when "the adversary process has been halted because of an essentially unresponsive party." *EW Polymer Grp., LLC v. GSX Int'l Grp., Inc.*, 622 F. Supp. 3d 232, 237 (M.D. La. 2022).

Under *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998), courts consider several factors in determining whether to grant default judgment, all of which strongly favor relief here: (1) **whether the grounds for default are clearly established** - here, proper service by licensed

process server and Defendant's complete failure to respond for eight days beyond the deadline establish clear grounds; (2) **whether the default was caused by excusable neglect or good faith mistake** - Defendant's sophisticated status as an established executive and CEO of multiple corporations with access to legal counsel, along with strategic resignation within 10 hours of being named individually negate any claim of mistake or neglect; (3) **the harshness of the default judgment** - Defendant's deliberate choice not to defend constitutional violations demonstrates she has elected this remedy rather than face scrutiny of her conduct on the merits; and (4) **whether the court would think itself obliged to set aside the default** - no reasonable basis exists for relief when a sophisticated party strategically avoids defending her actions.

Defendant's conduct suggests she views default judgment as preferable to defending constitutional violations on the merits, making this precisely the type of case where the adversary process has been halted by an essentially unresponsive party who has chosen not to participate in the legal system.

Finally, Plaintiff's decision to wait eight additional days beyond the Rule 12(a) deadline before filing for default further demonstrates that Defendant's default resulted from deliberate choice rather than inadvertent oversight. This grace period provided ample opportunity for any sophisticated party to correct a genuine mistake, making Defendant's continued silence even more probative of her strategic decision to avoid defending on the merits.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

## A. DECLARATORY RELIEF

1. Declare that:

- Defendant violated Plaintiff's First Amendment rights to free speech and free exercise of religion

- Defendant violated Plaintiff's Fourteenth Amendment equal protection rights through discriminatory enforcement

- Defendant's conduct constituted conspiracy to violate civil rights under 42 U.S.C. § 1983

- Defendant's systematic religious discrimination violated the Establishment Clause

- Defendant violated the Religious Freedom Restoration Act

- X Corp. operated as a government entity through unprecedented government entanglement during Defendant's tenure

- Defendant bears individual corporate officer liability for constitutional violations under her executive authority

- Defendant's "lawful but awful" framework constituted systematic religious viewpoint discrimination

- Defendant committed fraudulent misrepresentation through false public statements about content neutrality

- Defendant violated Texas Deceptive Trade Practices Act through systematic misrepresentation

- Defendant engaged in RICO violations through pattern of racketeering activity including wire fraud, mail fraud, and extortion

- Defendant breached contractual obligations including API services, Premium subscriptions, and platform access promises

- Defendant violated promissory estoppel through specific executive promises creating reasonable reliance

- Defendant committed tortious interference with business relations through systematic engagement suppression

- Defendant engaged in obstruction of justice through systematic evidence destruction during active litigation

- Defendant participated in civil conspiracy to obstruct justice through coordinated responses and strategic departures

- Defendant committed intentional interference with prospective business relations through deliberate platform suppression

- Defendant's strategic resignation within 10 hours of being named defendant constitutes consciousness of guilt

- Defendant's complete failure to respond despite proper service and sophisticated counsel demonstrates awareness that the constitutional violations are indefensible

## B. INJUNCTIVE RELIEF

2. Issue permanent injunction requiring Defendant Linda Yaccarino, individually, whether in her capacity as CEO of eMed or any other executive position, to refrain from:

- Implementing or directing discriminatory content moderation policies based on religious viewpoint

- o  Applying "lawful but awful" or similar suppression frameworks in a religiously discriminatory manner

- o  Coordinating with government actors to suppress religious expression, including conduct similar to that alleged against Plaintiff

- o  Making false public statements about content neutrality while implementing systematic religious discrimination

- o  Engaging in systematic evidence destruction during active litigation

## C. TESTIMONY AND DISCOVERY RELIEF

3.  Order Defendant Linda Yaccarino to appear for immediate deposition testimony regarding all matters related to the claims alleged in this action and the companion case Richards v. X Corp (Case No. 3:25-cv-916-X).

4.  Such testimony is essential for Plaintiff's companion case to establish the systematic nature of constitutional violations and prevent ongoing censorship, as Defendant's strategic resignation has otherwise made this critical evidence unavailable.

## D. DAMAGES

5.  Enter default judgment against Defendant Linda Yaccarino on all claims;

6.  Award compensatory damages in the amount of $500 million, reflecting:

- o  Loss of ministry reach and impact: $200 million

- o  Damage to reputation and standing: $100 million

- o  Loss of business opportunities: $150 million

     o   Emotional distress and constitutional harm: $50 million

7. Award additional punitive damages and such enhanced damages as may be available under RICO treble damages provisions (18 U.S.C. § 1964(c)), Texas Deceptive Trade Practices Act treble damages (§ 17.50(b)(1)), and other applicable statutory multipliers;

8. Award Plaintiff's reasonable attorneys' fees and costs under 42 U.S.C. § 1988, RICO, DTPA, and other applicable law;

9. Award pre- and post-judgment interest at the statutory rate;

## E. ADDITIONAL RELIEF

10. Grant such other relief as the Court deems just and proper.

**Respectfully submitted,**

/s/ Lisa Weingarten Richards
Lisa Weingarten Richards
LWR Law Offices
3060 Williams Dr
Ste 300 #510
Fairfax, VA 22031
*Tel.:* (202) 981-2059
lwr@lwrlawoffices.com
VA BAR # 96671
NY BAR #4932570
*Counsel for Plaintiff*

---

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was served upon all parties of record by the method indicated below:

☐ U.S. Mail, postage prepaid

☐ Hand delivery

☐ Facsimile transmission

☐ Electronic filing/service

x **No service required - Defendant never appeared**

**DATED:** September 12, 2025

/s/ Lisa Weingarten Richards
Lisa Weingarten Richards